# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 08 C 2568 | **DATE** | October 21, 2010 |
| **CASE TITLE** | *J&J Sports Productions, Inc., v. Aceves d/b/a Villa's Restaurant* | | |

**DOCKET ENTRY TEXT**

The plaintiff's motion for default judgment [29-1] is granted as follows. As to Count I, the court awards the plaintiff $2,090 in statutory damages, $5,250 in enhanced damages and the requested attorneys' fees and costs, which the court concludes are reasonable, in the amount of $3,327.25, for a total award of $10,667.50. Counts II and III are dismissed with prejudice and the clerk is directed to enter a Rule 58 judgment terminating this case.

■[ For further details see text below.]

00:00

## STATEMENT

Plaintiff J&J Sports Productions, Inc. brought suit against defendant, Arturo Aceves d/b/a Villa's Restaurant, seeking to recover for the alleged unlawful interception and exhibition of a boxing match entitled "Danger Zone: The Oscar De La Hoya v. Richardo WBC Middleweight Championship Fight Program" (the "Program"), which aired on May 6, 2006. The plaintiff's first amended complaint alleges three counts: Count I under 47 U.S.C. § 605; Count II under 47 U.S.C. § 553; and Count III for conversion.

After being served, the defendant never answered or appeared and the court entered default under Fed. R. Civ. P. 55(a) on January 8, 2009. Currently before the court is the plaintiff's motion for default judgment and prove-up.

The facts alleged in the plaintiff's complaint are deemed true as a result of the defendant's default. *In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004). The plaintiff entered into sublicensing agreements with various commercial entities throughout North America granting them rights to publicly exhibit the Program within their respective establishments. The plaintiff expended substantial monies marketing, advertising, promoting, administering and transmitting the Program to its customers. With full knowledge that the Program was not to be intercepted, received, or exhibited by entities unauthorized to do so, the defendant willfully and unlawfully published, divulged and exhibited the Program at the time of its transmission.

As to the current motion, the plaintiff has submitted the affidavit of one Christine Gier attesting to the fact that on May 6, 2006, she entered Villa's Restaurant in Round Lake, Illinois at approximately 9:24 p.m and observed two television sets broadcasting boxing matches. However, Ms. Gier's affidavit states that:

> We walked in at the very end of Fight no. 3. We watched the very beginning of the Fight for Kassim Ouma who was wearing yellow & orange boxers he was of African American Decendent [sic]. Marco Antonio Rubio was wearing Green/White/Red Shorts.

## STATEMENT

The plaintiff has attached to its motion the printout of a webpage indicating that the fight between Ouma and Rubio described by the investigator was an undercard fight of the De Lay Hoya/Mayorga fight, which was part of the Program misappropriated by the defendant.

The plaintiff states that it is moving for judgment only under Count I, 47 U.S.C. § 605. *J & J Sports Productions, Inc. v. Resendiz*, 08 C 4121, 2009 WL 1953154, at *2 (N.D.Ill. Jul. 2, 2009)("J & J is permitted to plead its § 553 and § 605 claims in the alternative, but it may recover damages only under one of those statutes."). The plaintiff does not seek judgment under Count III, the conversion count.

The plaintiff states that it is seeking damages only under 47 U.S.C. § 605, Count I, which was pled in the alternative to Count II under § 553. As noted by another court in this district, "J & J is permitted to plead its § 553 and § 605 claims in the alternative, but it may recover damages only under one of those statutes." *J & J Sports Productions, Inc. v. Resendiz*, 08 C 4121, 2009 WL 1953154, at *2 (N.D. Ill. Jul. 2, 2009)(citation omitted). The plaintiff does not seek relief under Count III, the conversion count.

Section 605(a) states as follows:

> [N]o person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, . . . . No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

In short, "[t]he Act prohibits commercial establishments from intercepting and broadcasting to its patrons unauthorized satellite cable programming." *Garden City Boxing Club, Inc. v. Dominguez*, No. 04 C 351, 2006 WL 1517775, at *2 (N.D. Ill. May 23, 2006)(citation omitted). Based on the allegations of the complaint and the affidavits described above, the court finds that the defendants willfully violated § 605(a).

The party seeking relief under this section of the statute may choose between actual or statutory damages. 47 U.S.C. § 605(e)(3)(C)(i). Here, the plaintiff seeks statutory damages. Section 605(e)(3)(C)(i)(II) states that "the party aggrieved may recover an award of statutory damages for each violation of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just. . . ." Moreover, § 605(e)(3)(C)(ii) provides that:

> In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this section.

Accordingly, the court may award statutory damages for the violation between $1,000 and $10,000

## STATEMENT

and enhanced damages for a willful violation of up to $100,000. In addition, the statute states that full costs including, reasonable attorney's fees, shall be awarded to an aggrieved party. 47 U.S.C. § 605(e)(3)(B)(iii). The plaintiff's counsel has submitted an affidavit attesting that it incurred attorney's fees and costs in the amount of $3,327.25.

The plaintiff asks for an award of statutory damages of $4,400, which is twice what it would have cost the defendants to order the program from the plaintiff. The plaintiff also requests $15,400, or seven times what it would have cost to purchase the rights to broadcast the program, in enhanced damages for the willful violation of § 605.

Another court in this district has noted that other courts generally award damages under § 605 based on the number of patrons multiplied by a baseline of $55 per person. *Joe Hand Promotions, Inc. v. Kaczmar*, No. 08 C 2910, 2008 WL 4776365, at *2 (N.D. Ill. Oct. 29, 2008)(citations omitted). The court agrees with this approach and concludes that, based on the final number of 38 patrons who were counted by the investigator, the appropriate amount of statutory damages is $2,090. With respect to enhanced damages, that same court notes that:

> The Act does not provide further guidance, but simply sets forth a maximum recovery and otherwise leaves the matter to the discretion of the court. In considering how much in enhanced damages to award, courts have looked to a number of factors, including: (1) the number of violations; (2) defendant's unlawful monetary gains; (3) plaintiff's significant actual damages; (4) whether defendant advertised for the event; and (5) whether defendant collected a cover charge on the night of the event. In connection with those factors, courts also consider the deterrent effect of the award, with an eye toward imposing an award that is substantial enough to discourage future lawless conduct, but not so severe that it seriously impairs the viability of the defendant's business (at least for a first offense).

*Id.* (citations omitted).

In determining the appropriate amount of damages, the court first notes that the defendants' company appears to be a small business. Thus, while the amount of damages must be sufficient to deter future behavior, the plaintiff has pointed to no authority that the damages should be so high as to put the defendant out of business. The record does not contain any information regarding the number of violations by these defendants, the defendants' unlawful monetary gains, whether the defendants advertised for the event. The investigator's affidavit indicates that the cover charge to enter the bar was $5.00. In addition, the court assumes that the defendants most likely sold food and beverage to those who were attracted by the exhibition of the boxing match. The court further notes that, while it finds that the violation was willful, there is no indication that these defendants are routine violators. Based on these facts, the court finds an award of enhanced damages against the defendants in the amount of $5,250 is appropriate.

In sum, as to Count I, the court awards the plaintiff $2,090 in statutory damages, $5,250 in enhanced damages and the requested attorneys' fees and costs, which the court concludes are reasonable, in the amount of $3,327.25, for a total award of $10,667.50. Counts II and III are dismissed with prejudice and the clerk is directed to enter a Rule 58 judgment terminating this case.